UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

CHARLES MOORE,

        Plaintiff,                Case No. 1:17-cv-615

v.                                  Honorable Gordon J. Quist

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.

_____/

## OPINION

      This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*.[1] Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed without prejudice for misjoinder with respect to Defendants MDOC, Washington, Trinity Services Group of Florida, Balling, Pallas, Russell, Burt, Trierweiler, Davis, Davids, Macauley, Brazee, Spaulding, Burks, Goodno, Labudde, Novak, Simmons, Wright, Howard, Jenkins, Parrish, Bolton, Barnes, Robinson,

---

[1]Although the Court granted Plaintiff's request to proceed *in forma pauperis* (ECF No. 9), in lieu of paying an initial partial filing fee of $48.23, Plaintiff paid the entire balance of $350.00.

Youngs, Heckman, Wentworth, Page, Miles, Johnson, Kludy, Hill, Rodriguez, Nowicki, Witham, and Teichthesen. Plaintiff's action will be dismissed with prejudice with respect to Defendant Cartwright for failure to state a claim.

### Factual Allegations

Plaintiff Charles Moore, is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Gus Harrison Correctional Facility (ARF) in Adrian, Michigan. The events about which he complains, however, began while he was incarcerated at the Muskegon Correctional Facility (MCF) in Muskegon, Michigan, and continued when he was transferred to the Bellamy Creek Correctional Facility (IBC) in Ionia, Michigan, on March 31, 2016. Plaintiff sues the following: the MDOC; MDOC Director Heidi Washington; Trinity Food Services; Trinity Foods Supervisor C. Balling; MDOC Hearings Officer Doug Pallas; Defendants MDOC Grievance Section Manager, Richard Russell; MCF Warden Sherry L. Burt; MCF Deputy Warden Paul Davis; MCF Administrative Assistant David Brazee; MCF Business Office Manager Don Spaulding; MCF Mailroom Clerk Martecia Burks; MCF Hearings Investigators Laurie Goodno and Christy Labudde; MCF Resident Unit Manager Lashae Simmons; MCF Prisoner Counselors Robert Howard and Glen Jenkins; MCF Grievance Coordinator L. Barnes; MCF Store Clerk Brenda Heckman; MCF Lieutenants David S. Wentworth, Unknown Page, and Unknown Miles; MCF Sergeants Unknown Johnson, Unknown Kludy and Unknown Hill; and MCF Corrections Officers Unknown Rodriguez, Unknown Cartwright, Unknown Witham and Unknown Teichthesen; IBC Warden Tony Trierweiler[2]; IBC Deputy Wardens John Davids and M. Macauley; IBC Hearings Investigator

---

[2]Plaintiff also notes that he had contact with Defendant Trierweiler during and prior to 2012 while Defendant Trierweiler was serving as a Deputy Warden at the Carson City Correctional Facility (DRF). (Compl., ECF No. 1, PageID.2, 12, 27 Plaintiff has sued Defendant Trierweiler with respect to Plaintiff's time at DRF in *Moore v. Smith et al.*, No. 1:13-cv-881 (W.D. Mich.). Although Plaintiff makes reference to that suit and the unconstitutional conduct alleged therein, those references appear to be made as background for Plaintiff's retaliation claims rather than as independent claims.

Unknown Novak; IBC Resident Unit Manager Rufus Wright; IBC Prisoner Counselors Lynn J.

Parrish and Denise Bolton; IBC Grievance Coordinator M. Robinson; IBC Recreation Director B.

Youngs; and IBC Corrections Officer Unknown Nowicki.

The first incident[3] about which Plaintiff complains occurred on January 16, 2015:

> On January 16, 2015, I was called to [the] facilities control center to pick up [privileged] Legal Mail sent to me from Attorney Mary Owens. Sgt. Moreno appeared to open the mail. At that time officer Cartwright [entered] the office and was handed my opened legal mail. She emptied the mails contents and began inspecting for contraband. The only items that were empties from the original envelop and I witnessed being inspected were four (4) sheets of paper with information on them. After officer Cartwright completed her inspection and approved the mail she then handed me the mail and I exited the building. As I walked, I began reading the cover letter that was included by Attorney Mary Owens and I noticed that she had stated that she had included a stamped, self-addressed envelope. I returned to Control Center and asked Officer Cartwright to look for the missing envelope. Officer Cartwright then told me that the mail did include a stamped self-addressed envelope but she kept it because I am not allowed to have stamps. I then asked her why would she violate policy by removing something from my legal mail and not providing me with notification. She then said, "what difference does it make. You can't have it anyway." I then left Control Center and went to see my Prisoner Counselor Mr. Howard, to log a verbal complaint against officer Cartwright for consistently disregarding policy and making Administrative decisions based on what she personally feels that I should and should not have and removing items from my mail without giving me notice that she removed them. At that time I also stated to PC Howard that I had a right (by policy) to receive stamped self-addressed envelopes from attorneys.

> After exiting PC Howard's office I was informed by 5-unit officer McKenzie that I was to report back to Control Center. I arrived back in Control Center and was told by officer Cartwright that she had checked with the facilities mail room staff and was told that I was permitted to receive the stamped envelope. She then handed it to me and I left.

(Grievance, ECF No. 1, PageID.40-41; *see also* Compl., ECF No. 1, PageID.12-13.) Plaintiff

contends that Defendant Cartwright is liable because she took the envelope and also, apparently,

because it was legal mail.

---

[3]The January 16 incident is the earliest incident of which Plaintiff complains. It is also the first incident he describes in the factual allegations in his complaint. (Compl., ECF No. 1, PageID.12.)

Plaintiff's complaint then jumps from the January, 2015 incident to July of 2015, and then continues with a nearly day-by-day account of the various wrongs perpetrated against him at MCF until March 31, 2016, when he was transferred to IBC. During his time at MCF, Plaintiff alleges he was the victim of unconstitutional conduct by other MCF personnel: including inappropriate work assignments; threats of misconducts; false and retaliatory misconduct reports; deliberate indifference to Plaintiff's back condition; service of spoiled foods; improper removal of money from Plaintiff's account; procedural irregularities in the handling of grievances and misconduct hearings; overcharging for postage; improper removal from prison employment, the Honor Unit, and the Warden's Forum; destruction and theft of Plaintiff's property, including legal papers; and a retaliatory transfer. Such conduct continued at IBC after the transfer. Plaintiff offers an almost day-by-day chronicle of his time at IBC as well. He alleges he was wrongfully housed at Level IV, he suffered additional irregularities in the handling of grievances and misconduct hearings; denial of healthcare services; denial of disciplinary credits; destruction of attorney/client privilege by monitoring of telephone conversations between Plaintiff and attorney relatives; possible retaliatory opening of legal mail outside of Plaintiff's presence; denial of the ability to use visitors to send out legal mail; and denial of yard time and the use of a hair pick. Plaintiff notes that he has routinely filed grievances to address these wrongs and routinely been denied relief. He attaches many of the grievances to his complaint.

After identifying the Defendants and then making specific chronological factual allegations, Plaintiff purports to state five causes of action. In Count I, Plaintiff alleges Defendants retaliated against him for protected conduct (Plaintiff's filing of complaints and grievances) in violation of the First Amendment. In Count II, Plaintiff alleges that Defendants have a practice of failing to comply with the applicable administrative rules and policy directives in the handling of

misconduct and grievance proceedings, all in violation of the Fifth and Fourteenth Amendment due process guarantees. In Count III, Plaintiff identifies a specific instance of the violation of his due process rights: the false sexual misconduct conviction and punishment. In Count IV, Plaintiff alleges that Defendants violated his Sixth and Fourteenth Amendment right to the assistance of counsel by opening Plaintiff's legal mail and, under MDOC policy, monitoring Plaintiff's telephone calls with his attorneys because they are also his relatives. Finally, in Count V, Plaintiff claims Defendants subjected him to cruel and unusual punishment by serving him spoiled food, exposing him to unbalanced and out of control corrections officials, violating state and federal laws, subjecting him to racial discrimination, further depriving him of his liberty, causing him physical injury, exposing him to harm from other prisoners, and interfering with his legal proceedings. The detail from Plaintiff's chronological account is lacking in the Counts describing his causes of action where he typically attributes all of these wrongs to "Defendants" generally.

Plaintiff asks the Court to enter a declaratory judgment stating that Defendants have violated his constitutional rights and to award compensatory and punitive damages against each Defendant.

## **Discussion**

### I. Misjoinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the

action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 CHARLES ALLEN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE CIVIL § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778. When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Michigan Dep't of Corrections*, 2007 WL 4465247, at *3 (E.D. Mich. December 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person -- say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions -- should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168-69 (3rd Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Tuft v. Texas,* 397 F. App'x 59, 61 (5th Cir. 2010) ("In addition, 'the creative joinder of actions' by prisoner plaintiffs to avoid the strictures of the Prison Litigation Reform Act of 1995 . . . should be discouraged.*"*); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) ("We doubt that Congress intended that § 1915(g) could be so facilely circumvented by the creative joinder of actions."); *Shephard v. Edwards*, 2001 WL 1681145, at * 1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Plaintiff's first set of allegations concerns Defendant Cartwright's momentary confiscation of his stamped, self-addressed envelope on January 16, 2015. Plaintiff does not identify which Count might encompass this misconduct. The Court, construing Plaintiff's complaint liberally, will examine the allegation as a deprivation of property without due process in violation of the Fourteenth Amendment, a retaliatory act for prior protected conduct in violation of the First Amendment, a direct interference with Plaintiff's access to the Courts under the First Amendment, and an interference with Plaintiff's right to counsel under the Sixth Amendment. Other than the January 16, 2015 incident, Defendant Cartwright is not otherwise mentioned in the complaint. Plaintiff raises no other claims against her.

For purposes of determining the propriety of joinder, the Court must determine whether Plaintiff's remaining claims against all of the other Defendants are part of the same series of transactions and occurrences as Plaintiff's first claim against Defendant Cartwright. The Court concludes they are not. They are distinct in time, place, and participants and, thus, are not properly joined.

Plaintiff attempts to create some relationship between the disparate occurrences by claiming that every action taken by Defendants was taken in retaliation for Plaintiff's exercise of his First Amendment rights, specifically, the filing of grievances. Certainly, retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Even if one accepts that the various wrongs alleged by Plaintiff constitute sufficiently adverse actions, however, he has still failed to state a claim because, with the exception of the "false misconduct" retaliations in which

Defendant Cartwright played no part, he alleges no facts to show that the adverse actions were motivated by the protected conduct.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening). In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Plaintiff merely alleges the ultimate fact of retaliation. He alleges no facts from which to reasonably infer that Defendants' actions were motivated by any of his protected conduct. He concludes that because he filed some grievances within a few weeks or months before Defendants' actions, their actions must have been motivated by his grievances. The Sixth Circuit, however, has been reluctant to find that temporal proximity between the filing of a grievance and

an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). This is especially true where, as here, the plaintiff is a prolific filer of grievances. *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"). Plaintiff alleges nothing more than temporal proximity between Defendants' conduct and his many grievances. Such allegations are insufficient to state a retaliation claim.

More importantly, for purposes of considering the propriety of joinder, Plaintiff's threadbare allegations do not permit any inference of connection between the allegedly retaliatory conduct of Cartwright in momentarily confiscating Plaintiff's envelope and the allegedly retaliatory conduct by others months later. Because the claims arise from distinct transactions and occurrences, they are not properly joined in this action.

The only other elements that are common across most or all of Plaintiff's claims are the names of Defendants higher up in the MDOC hierarchy. Plaintiff might suggest that Defendants like MDOC Director Heidi Washington or MCF Warden Sherry Burt are liable for the conduct of Defendant Cartwright because of their supervisory position. Because Defendant Washington enjoys such a relationship with all of the other MDOC employees and Defendant Burt enjoys such a relationship with all of the other MCF employees, Plaintiff might argue that the relationship can serve to connect the claims. That connection is far too attenuated to justify joining Plaintiff's claims in one action.

Plaintiff fails to make specific factual allegations of wrongful conduct against supervisory officials like Washington or Burt with respect to the January 16 confiscation of his stamped, self-addressed envelope. Government officials may not be held liable for the

11

unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

For the same reason that a supervisory relationship is insufficient to establish liability for the misconduct of a subordinate, denying a grievance or failing to act based on information contained in a grievance is insufficient to establish § 1983 liability. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 6768 (2009).

If Plaintiff had alleged facts indicating that Defendant Washington, or any of the Defendants, played some active role in all of his claims, that might be sufficient to establish enough of a connection to permit his otherwise disparate claims to be joined. Here, however, as with Plaintiff's omnibus retaliation scheme, the allegations against Washington or Burt that might support a finding of connection between Plaintiff's claim against Cartwright and his other claims are simply not there.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir.

2006); *Carney v. Treadeau*, No. 07-cv-83, 2008 WL 485204, at \*2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("Parties may be dropped . . . by order of the court . . . of its own initiative at any stage of the action and on such terms as are just."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV, Inc.*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Building Co.*, 848 F.2d at 682.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at \*1 (6th Cir. Feb. 2, 1999). Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

The actions about which Plaintiff complains occurred from January of 2015 through October of 2016, well within the three-year period of limitations. Those claims are not at risk of

being time-barred. Plaintiff therefore will not suffer gratuitous harm if the improperly joined Defendants are dismissed. Accordingly, the Court will exercise its discretion under Rule 21 and dismiss, for misjoinder, all of Plaintiff's claims except those arising from Defendant Cartwright's momentary confiscation of Plaintiff's stamped, self-addressed envelope, which includes all claims against Defendants MDOC, Washington, Trinity Services Group of Florida, Balling, Pallas, Russell, Burt, Trierweiler, Davis, Davids, Macauley, Brazee, Spaulding, Burks, Goodno, Labudde, Novak, Simmons, Wright, Howard, Jenkins, Parrish, Bolton, Barnes, Robinson, Youngs, Heckman, Wentworth, Page, Miles, Johnson, Kludy, Hill, Rodriguez, Nowicki, Witham, and Teichthesen, without prejudice to the institution of new, separate lawsuits by Plaintiff against those Defendants.[4] *See Coughlin*, 130 F.3d at 1350 ("'In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs'"); *Carney*, 2008 WL 485204, at *3 (same).

## II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[4]Plaintiff is cautioned that he must limit all future actions to Defendants who are transactionally related to one another.

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Construing Plaintiff's complaint liberally, he alleges a deprivation of property without due process in violation of the Fourteenth Amendment, a retaliatory act for prior protected conduct in violation of the First Amendment, a direct interference with Plaintiff's access to the Courts under the First Amendment, and an interference with Plaintiff's right to counsel under the Sixth Amendment.

III.    Deprivation of property without due process of law

Plaintiff alleges that Defendant Cartwright temporarily deprived him of him of his stamped envelope without due process of law. The elements of a procedural due process claim are:

(1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). The property here is only a stamped, self-addressed envelope, but it is property nonetheless. Here, however, Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes

actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff fails to state a claim for deprivation of property without due process of law.

IV.  First Amendment retaliation

Plaintiff alleges generally the actions of the Defendants, presumably including the alleged misconduct of Defendant Cartwright, were taken in retaliation for Plaintiff's exercise of his First Amendment rights. As noted above, retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X*, 175 F.3d at 394. As also noted above, to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith*, 250 F.3d at 1037 (citing *Mount Healthy*, 429 at 287).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith*, 250 F.3d at 1037. Even if one accepts that temporary confiscation of a stamped, self-addressed envelope constitutes sufficiently adverse action, however, Plaintiff has still failed to state a claim because he alleges no facts to show that the adverse action was motivated by the protected conduct. Plaintiff merely alleges the ultimate

fact of retaliation. He alleges no facts from which to reasonably infer that Defendant Cartwright's action was motivated by any of Plaintiff's protected conduct. Plaintiff does nothing more than repeat the word "retaliation." Such allegations are insufficient to state a retaliation claim.

V.     Access to the courts

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:      *Bounds* does not guarantee inmates the wherewithal
                                        to transform themselves into litigating engines
                                        capable of filing everything from shareholder

18

> derivative actions to slip-and-fall claims. The tools
> it requires to be provided are those that the inmates
> need in order to attack their sentences, directly or
> collaterally, and in order to challenge the conditions
> of their confinement. Impairment of any other
> litigating capacity is simply one of the incidental
> (and perfectly constitutional) consequences of
> conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416. An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005); *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578 (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)).

Plaintiff fails to identify the nature of the legal proceedings that were the subject of the communication from his attorney. But, even if the communication concerned a direct appeal,

habeas corpus application, or civil rights claim, Plaintiff has failed to identify, and it is difficult to imagine, any injury that resulted from the temporary confiscation of the stamped, self-addressed envelope. Accordingly, he has failed to state a claim for violation of his right of access to the courts.

VI. Interference with counsel

Any interference with legal mail implicates constitutional protections in addition to the right to access the courts:

> A prisoner's right to receive mail is protected by the First Amendment. *See Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974); *Parrish v. Johnson*, 800 F.2d 600, 603 (6th Cir.1986). In criminal settings, the Sixth Amendment protects the attorney-client relationship from unwarranted intrusion. *Wolff v. McDonnell*, 418 U.S. 539, 576, 94 S.Ct. 2963, 2984, 41 L.Ed.2d 935 (1974). Prison officials may, of course, impose restrictions that are "reasonably related" to the prison's security needs or other "legitimate penological objectives." *Turner v. Safley*, 482 U.S. 78, 87, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). Our court has said that prison officials must "put forth legitimate reasons for interfering with a prisoner's incoming mail." *Parrish*, 800 F.2d at 604.

*Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). The courts have balanced the prisoner's right to receive mail against the prison's need to maintain security by permitting prison officials to inspect mail, but restricting that inspection when it is legal mail, precluding prison officials from a detailed reading of legal mail and requiring that it be opened in the prisoner's presence. *See Wolff v. McDonnell*, 418 U.S. 539, 577 (1974); *Parrish v. Johnson*, 800 F.2d 600, 603-604 (6th Cir. 1986). That is what Defendant Cartwright did here. According to Plaintiff, Sergeant Moreno, not Defendant Cartwright, actually opened the mail and Defendant Cartwright, thereafter, inspected it and gave it to Plaintiff, with the exception of the stamped, self-addressed envelope. (Grievance, ECF No. 1, PageID.40-41.) Plaintiff has failed to allege any conduct by Defendant Cartwright that falls outside the bounds of reasonableness with respect to Defendant Cartwright's inspection of Plaintiff's legal mail. Accordingly, Plaintiff has failed to state a First Amendment claim.

The Sixth Amendment right to the assistance of counsel applies only to criminal prosecutions and "extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). The Sixth Amendment right does not extend to collateral attacks on a conviction. *Id.* Although Plaintiff does not identify the legal proceeding at issue in the January 16 legal mail, it could not be his criminal prosecution or the first appeal of right because his convictions and sentences became final long ago. Indeed, Plaintiff recently completed a collateral attack on his convictions that has been pending since 2015. *People v. Moore*, 893 N.W.2d 617 (Mich. 2017). Although one may state a § 1983 claim for interference with the right to confer with counsel as guaranteed by the Sixth Amendment, *see Weatherford v. Bursey*, 429 U.S. 545 (1977), Plaintiff has failed to allege that counsel was acting within the Sixth Amendment guarantee here. Thus, Plaintiff has failed to state a claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed without prejudice for misjoinder with respect to Defendants MDOC, Washington, Trinity Services Group of Florida, Balling, Pallas, Russell, Burt, Trierweiler, Davis, Davids, Macauley, Brazee, Spaulding, Burks, Goodno, Labudde, Novak, Simmons, Wright, Howard, Jenkins, Parrish, Bolton, Barnes, Robinson, Youngs, Heckman, Wentworth, Page, Miles, Johnson, Kludy, Hill, Rodriguez, Nowicki, Witham, and Teichthesen. Plaintiff's action will be dismissed with prejudice with respect to Defendant Cartwright for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no

good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: August 10, 2017             _____/s/ Gordon J. Quist_____
                                           GORDON J. QUIST
                                   UNITED STATES DISTRICT JUDGE